# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

FREDERICK SPENCE,

        Plaintiff,

v.                                      Case No. 06-C-619

MATTHEW J. FRANK, RICK RAEMISCH,
JEFFREY P. ENDICOTT, and THOMAS NICKEL,

        Defendants.

## ORDER

The plaintiff, Frederick Spence, a Wisconsin state prisoner, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. He is proceeding on claims that the defendants: (1) violated his right to equal protection by singling him out for transfer and by imposing greater punishment on him than on the other inmates; (2) violated his rights of freedom of speech and association when they imposed punishment upon him for constitutionally protected conduct; and (3) violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1 and the First Amendment by imposing punishment on him for referring to correctional staff by their Native American spiritual names. The parties have filed motions for summary judgment, which will be addressed herein.

### STANDARD FOR SUMMARY JUDGMENT

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden of showing the needlessness of trial – (1) the absence of a genuine issue of material fact; and (2) an entitlement to judgment as a matter of law – is upon the movant. However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Id.* at 267; *see also Celotex Corp.*, 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . ."); Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial"). "Rule 56(c) mandates the entry of summary judgment, . . . upon motion, against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

The fact that both parties have moved for summary judgment, and thus both parties simultaneously are arguing that there is no genuine issue of fact, does not establish that a trial is unnecessary or empower the court to enter judgment as it sees fit. *See* 10A Charles Alan Wright et al. § 2720 at 327-28 (3d ed. 1998). The court may grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law on the basis of the material facts not in dispute. *See Mitchell v. McCarty*, 239 F.2d 721, 723 (7th Cir. 1957). Cross-motions for summary judgment do not convert a dispute into a question of law if material factual questions are involved and additional evidence may be adduced at trial which would be helpful in the disposition of the case. *See M. Snower & Co. v. United States*, 140 F.2d 367 (7th Cir. 1944). Each party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law. The fact that one party fails to satisfy that burden on its own motion does not automatically indicate that the opposing party has satisfied its burden and must be granted summary judgment on the other motion. *See* 10A Charles Alan Wright et al § 2720 at 335.

## FACTS[1]

Defendant Matthew Frank was the Secretary of the Wisconsin Department of Corrections (DOC) from January 6, 2003, to August 31, 2007. (DFOF ¶ 1).

---

[1]This section is taken from the plaintiff's proposed findings of fact (PFOF), the defendants' proposed finding of fact (DFOF), and the parties' affidavits and other evidence filed in support of their proposed facts. Unless otherwise indicated, facts that do not comply with Federal Rule of Civil Procedure 56(e) are not included in this section. *See* Fed. R. Civ. P. 56(e) (Affidavits must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated).

Case 2:06-cv-00619-JPS   Filed 03/23/09   Page 3 of 23   Document 75

Defendant Rick Raemisch is the current Secretary of the DOC. (DFOF ¶ 4).
Defendant Jeffrey Endicott was the Warden of Redgranite Correctional Institution
(RGCI) at all times relevant. (DFOF ¶ 6). Defendant Thomas Nickel was the
Correctional Management Services Director at RGCI at all times relevant. (DFOF
¶ 8). At times, Nickel was also assigned to act as a hearing officer on prison
disciplinary matters at RGCI. (DFOF ¶ 9).

On September 8, 2005, the plaintiff received Conduct Report #1768217 (CR)
for violating Wis. Admin. Code § DOC 303.26[2] by conveying affection for a staff
member in writing and requesting special attention while incarcerated at the
Wisconsin Resource Center (WRC). (PFOF ¶ 1; DFOF ¶ 13). The violation was
described in the CR as follows:

> This conduct report is a result of an investigation by Cindy Harding,
> IUS, which determined that Inmate Spence, #132827 was in violation
> of DOC 303.26 by conveying affection for a staff member in writing and
> requesting special attention. Evidence of this correspondence is
> attached, including Interview/Information requests, DOC-761 and
> greeting cards. These items include special names and endearments.
> During interview, Inmate Spence reported he writes cards to many staff,
> all expressing the same sentiment. Correspondence is not the same
> – see attached. EOR-

(PFOF ¶ 2; DFOF ¶ 14).

---

[2]Wisconsin Administrative Code § DOC 303.26 provides in relevant part:

**DOC 303.26 Soliciting staff.** An inmate who does any of he following is guilty of an offence:

(6) Conveys affection to, or about staff verbally or in writing whether personally written or
commercially written or by drawings; or asks for addresses, phone numbers, favors or
requests special attention of a staff member or acquaintance or family of a staff member.

(DFOF ¶ 25).

On September 2, 2005, the plaintiff was transferred from the WRC, where the alleged rule violation occurred, to the RGCI and held in temporary lockup (TLU), pending the outcome of the disciplinary proceedings. (PFOF ¶ 4; DFOF ¶ 12). Defendants Endicott and Nickel did not personally participate in any decision to transfer the plaintiff to RGCI. (DFOF ¶ 11).

On September 20, 2005, a full due process hearing was convened on the conduct report. (PFOF ¶ 6; DFOF ¶ 24). The disciplinary proceedings on the CR took place at RGCI because the plaintiff had already been transferred there by the time he received it. (DFOF ¶ 15). The plaintiff requested Kari Cupertino, Steve Randall, Paula Harry, Maggie Engall, and "Scott" as witnesses for his disciplinary hearing. (DFOF ¶ 16). Kari Cupertino and Paula Harry were not able to attend the hearing due to scheduling conflicts but did provide statements for the hearing.[3] (DFOF ¶ 17). Maggie Engall was out of the institution for an extended period of time and was not able to attend the hearing or provide a statement. (DFOF ¶ 18). Steven Randall was no longer a state employee and was not able to attend the hearing or provide a statement. (DFOF ¶ 19). The plaintiff's requested witness "Scott" was an unknown name and was, therefore, not available to provide a statement or attend the hearing. (DFOF ¶ 20). Endicott and Nickel did not personally make the determination of which witnesses would or would not appear

---

[3]Pursuant to § DOC 303.81(4): If a witness is unavailable to testify, the adjustment committee may consider a written statement, a transcript of an oral statement, or a tape-recorded statement. Unavailability means death, transfer, release, hospitalization, or escape in the case of an inmate; death, illness, vacation, no longer being employed at that location, or being on a different shift in the case of a staff member. (DFOF ¶ 21).

Case 2:06-cv-00619-JPS   Filed 03/23/09   Page 5 of 23   Document 75

at the hearing; nor did Endicott and/or Nickel personally make the determination of which witness would submit a written response to questions from the plaintiff in lieu of a personal appearance at the hearing. (DFOF ¶ 23). These determinations were made by another staff member of RGCI.[4] *Id.*

> The plaintiff pled not guilty and gave the following statement in his defense:

> Mr. Spence pleaded not guilty to 303.26. The institution put me at a disadvantage by moving me to RGCI. Her native American name is "Morning Dove." I was respectful. Bhoo-Jhoo is a term of endearment in native American. It is a respectful term. I use to call her "smurf" cause she is short. I was joking around. This was all meant in a spiritual way. We would go to the kitchen together and cook the bread and rice and I was just thanking her. I wrote to lots of staff and sent these thing to all of them. I asked Randell (unit manger) if I could give her these along with a card signed by all the inmates. He approved it. I gave Randell a personal card and letter when he left. I also gave cards like this to a lot of staff. I was not soliciting anyone. She was the spiritual leader of the Native American group.

(PFOF ¶ 7). After reviewing all of the evidence, both in support of the plaintiff and against him, Nickel found that the plaintiff violated § DOC 303.26(6). *Id.* Defendant Nickel, who was the hearing officer, set forth his reasons for finding the plaintiff guilty in part as follows:

> After reviewing all the evidence (conduct report #1768217), the advocate and witnesses' statements, the evidence (written material) and Mr. Spence's statement), I find that it is more likely than not that Mr. Spence engaged in a violation of 303.26 asking inappropriate questions and making inappropriate comments to staff of WRC.

> I find that the statements contained in Unit Supervisor Harding's conduct report, the advocate and witnesses' statements, the evidence (written material) and by Mr. Spence's statements, that Mr. Spence directly violated 303.26(6) by his direct actions of asking personal non-

---

[4]The plaintiff disputes this proposed fact, however, his dispute is not supported by the record.

Case 2:06-cv-00619-JPS   Filed 03/23/09   Page 6 of 23   Document 75

work related questions and comments to staff members at WRC. Comments such as I love you, morning dove, smurf and mother smurf are conveys written affection [sic]. I find that it is more likely than not that Mr. Spence was asking for special attention from these female staff members of WRC. I find that it is more likely than not that Mr. Spence's statements were meant to lead to favoritism and at the very least showed the appearance of impropriety towards these female staff of WRC. It was shown by the evidence at the hearing that Mr. Spence showed a different "approach" to female staff compared to his written communication to male staff.

I find that Investigator Harding and the WRC staff witnesses have nothing to gain by reporting false information and were did not [sic] misunderstand Mr. Spence's words and actions towards another staff member. Mr. Spence has much to gain by providing inaccurate information about his actions and intentions.

(DFOF ¶¶ 24-26). Because the violation created a risk of serious disruption in the institution and the housing unit, created a risk of serious injury to staff, created a risk to the security of the institution, its staff and inmates and especially the female staff of WRC, Nickel determined that a disposition of 360 days of disciplinary separation was appropriate. (DFOF ¶ 27). Nickel also referred the plaintiff back to the Program Review Committee (PRC) so that the PRC could determine his appropriate institutional placement and security classification in light of the guilty finding on the CR. (DFOF ¶ 29). The penalty Nickel imposed on the plaintiff upon finding him guilty of violating § DOC 303.26(6) was made after an individualized evaluation of the circumstances underlying the CR in light of the sentencing factors set forth in § DOC 303.83. (DFOF ¶ 31). Nickel did not act as a hearing officer concerning any other WRC inmate accused of committing the same offense as the plaintiff. (DFOF ¶ 32). Nickel found the plaintiff guilty of violating § DOC 303.26(6) on his

-7-

individualized evaluation of all the evidence presented at the disciplinary hearing. (DFOF ¶ 33).

On September 21, 2005, the plaintiff appealed the decision of the hearing officer. (PFOF ¶ 10; DFOF ¶ 34). On October 7, 2005, defendant Endicott affirmed the hearing officer's decisions and the sentence. (PFOF ¶ 11; DFOF ¶ 35). Endicott noted that a review of the evidence supported the hearing officer's conclusions regarding the conduct report. *Id.* The plaintiff again appealed the decision of the hearing officer on October 10, 2005. (DFOF ¶ 36). On October 12, 2005, Endicott again affirmed the hearing officer's decision and the sentencing noting that the decision was clearly made in the appeal dated October 7, 2005. (DFOF ¶ 37). Endicott had no knowledge of other inmates similarly situated to the plaintiff that received conduct reports for the same charges and incident and received lesser punishment than the plaintiff or that were treated differently than him. (DFOF ¶ 38). Endicott did not act as the § DOC 303.76(7) Appeal Authority concerning any other WRC inmate accused of committing the same offense as the plaintiff. (DFOF ¶ 39). Endicott made his appeal decision concerning the CR on the basis of his own individualized evaluation of those particular disciplinary proceedings. (DFOF ¶ 40). As a part of Endicott's duties as RGCI Warden, he acted as the appropriate reviewing authority on ICRS Offender Complaints. (DFOF ¶ 41).

Defendant Frank did not personally participate in any decision regarding the disposition of CR #1768217. (DFOF ¶ 42). He had no personal involvement with regard to any decision made on CR #1768217. (DFOF ¶ 43).

The enforcement of § DOC 303.26 is necessary for the security of the institution and the safety of inmates, staff and visitors. (DFOF ¶ 46). The rationale for § DOC 303.26 is set forth in the APPENDIX Note for this disciplinary rule, and reads as follows:

> **Note: DOC 303.26.** This section forbids all types of contacts between inmates and staff which could lead to favoritism or bribery. Just as theft would be very difficult to control in a prison without a rule prohibiting all transfer of property (See DOC 303.40), so bribery and favoritism would be difficult to control in the absence of a rule prohibiting all exchanges between staff and inmates. Also, the appearance of impropriety may be as destructive to inmate or staff morale as would actual impropriety. The existence of unwritten exceptions tends to undermine respect for the rule as a whole because it may appear to the inmates to represent either half-hearted or arbitrary enforcement.

(DFOF ¶ 47). The plaintiff was found guilty of violating § DOC 303.26 on the basis of his written communications to a WRC staff member, which included terms of endearment such as "morning dove," "smurf," and "mama smurf"; as well as telling that staff member "I love you." (DFOF ¶ 48). The plaintiff's conduct came within the prohibition of § DOC 303.26, and he was appropriately the subject of discipline under the rationale expressed in the APPENDIX Note for § DOC 303.26. (DFOF ¶ 50).

The plaintiff filed ICRS Offender Complaint RGCI-2005-37708 on December 12, 2005, complaining of procedural errors in the CR and that his rights were violated. (PFOF ¶ 12; DFOF ¶ 51). On January 12, 2006, Inmate Complaint Examiner (ICE) Sally Wess found that, in accordance with § DOC 310.11(3), the investigation of a complaint filed under § DOC 310.08(3) is limited to review of the

record. (DFOF ¶ 52). Wess reviewed the record concerning the plaintiff's complaint and found no harmful procedural error. (DFOF ¶ 53). Wess noted that the record showed the hearing officer clearly outlined the reason for the decision, appropriate notice was provided to the plaintiff, and the disposition did not exceed the maximum penalties listed in § DOC 303.84. *Id.* Wess recommended that RGCI-2005-37708 be dismissed. (DFOF ¶ 54). Endicott found Wess' recommendations reasonable under the circumstances, and in agreement with Wess' recommendation, he dismissed RGCI-2005-37708 on January 13, 2006. (PFOF ¶ 13; DFOF ¶ 55).

The plaintiff appealed the decision of Offender Complaint RGCI-2005-37708 to the Corrections Complaint Examiner (CCE) on January 20, 2006. (PFOF ¶ 14; DFOF ¶ 57). On January 23, 2006, CCE Sandra Hautamaki recommended that RGCI-2005-37708 be dismissed with modifications. (DFOF ¶ 58). Hautamaki reviewed the record and noted that there were two deficiencies. (DFOF ¶ 59). She found that the charge the plaintiff was found guilty of carries subsections and that the decision section of the hearing record did not list the subsection the plaintiff violated and that this must be identified. (DFOF ¶ 60). Hautamaki further found that the hearing record did not contain a statement as to the credibility of the reporting staff, the accused or the witnesses. (DFOF ¶ 61). Hautamaki noted that while the record correctly explained how the hearing officer arrived at a finding of guilty, there must be a statement as to the credibility of those listed. (DFOF ¶ 62). Hautamaki recommended that the CR be returned to the hearing officer for completion of the record. (DFOF ¶ 63).

Defendant Raemisch concluded that the CCE's recommendations were reasonable in light of the circumstances, and he dismissed RGCI-2005-37708 on February 21, 2006, with the modifications recommended by the CCE. (PFOF ¶ 14; DFOF ¶ 64). Raemisch had no knowledge of other inmates similarly situated to the plaintiff that received conduct reports for the same charges and incident and received lesser punishment than the plaintiff or that were treated differently than him.[5] (DFOF ¶ 65). Raemisch had no personal involvement in decision-making on this CR until the plaintiff brought an administrative appeal concerning ICRS Offender Complaint RGCI-2005-37708. (DFOF ¶ 66).

The plaintiff asserts that during the course of the investigation referred to in the conduct report, three to four other inmates received conduct reports for the same incident and were charged under the same rule violation. (PFOF ¶ 3). He further asserts that the other inmates who were charged in the same incident were all adjudged guilty, but received a substantially less sentence. (PFOF ¶ 9). Inmate Eugene Pace avers:

> I lived on Unit B-6 at Wisconsin Resource Center for approximately (9) nine months or so and it was common practice that I and other inmates signed cards for staff whom work at Wisconsin Resource Center of Unit B-6. Staff sometimes signed cards along with us inmates of Unit 6. Many times staff asked us to sign cards for other staff. I signed cards for Mrs. Kari Cupertino Unit B-6 Social Worker along with about (20) twenty other inmates and (5) other Staff (2) two

---

[5] The plaintiff disputes this proposed finding of fact. He alleges the information and evidence that he was punished harsher than other inmates who were charged in the same incident and that the decision to punish him violated his right to practice his religion as well as his transfer to RGCI disadvantaged him compared to the other inmates, similarly situated, was all contained in the Inmate appeal complaint RGCI-2005-37708. (Raemisch Aff., Ex. C at 10).

other Native American inmates and Mrs. Kari Cupertino praying together in the courtyard of Unit B-6.

I had received a conduct report for Soliciting Staff, I was allowed to have my disciplinary hearing at Wisconsin Resource Center and was given 90 days segregation.

(Affidavit of Eugene Pace).  Inmate Jeremy Clark avers:

I lived on Unit B-6 at Wisconsin Resource Center for approximately (3) three to (4) four months or so and it was common practice that I and other inmates signed cards for staff who work at Wisconsin Resource Center of Unit B-6.  Staff sometimes signed cards along with us inmates of Unit 6.  Many times staff asked us to sign cards for other staff.  I signed cards for Mrs. Kari Cupertino Unit B-6 Social Worker along with about (20) twenty other inmates and (5) five other staff members.  I also saw Frederick Spence and Donald Olson, inmates and (2) two other Native American inmates and Mrs. Kari Cupertino praying together in the Courtyard of Unit B-6.  I was able to have my disciplinary hearing at Wisconsin Resource Center.  I got 90 days seg.

(Affidavit of Jeremy Clark).  Inmate Michael Lee Winston avers:

I lived on Unit B-6 at WRC for approximately 1 year and it was common practice that I and other inmate signed cards for staff whom work at WRC B-6 unit.  Staff sometimes signed the cards along with inmates.  Many time staff asked us to do the cards.  I gave Ms. Kari Cupertino Unit 6 Social Worker a card(s) along with at least 20 other inmates plus staff as well gave her cards.  I can also say I saw Ms. Cupertino along with inmates Frederick Spence and Donald Olson #415805 and a few other Native Americans all praying together and I seen them do this five time or more on and in Unit B-6 courtyard.  Mr. Spence and other inmates called Cupertino smurf all the time she always answered to that name.  It was common.  Mr. Eli Nunez made a 11x10 card that inmate and staff signed.  He made (3) other large cards for her as well.  I received a conduct report for soliciting staff, and was able to have my ticket heard at WRC with Eli Nunez.  I received hole time 180 days but not for giving Cupertino cards it was for letters.  Eli Nunez ticket was dismissed altogether.

(Affidavit of Michael Lee Winston).

Case 2:06-cv-00619-JPS   Filed 03/23/09   Page 12 of 23   Document 75

There is a common practice at WRC whereby inmates refer to staff members by their nicknames. (PFOF ¶ 15). According to Sgt. Scott Farmer, who in 2005 was a patient care technician on Unit 6 at the WRC, the plaintiff and other inmates called him "Superman." (Affidavit of Sgt. Scott Farmer). He further avers that the plaintiff and other inmates called Mrs. Kari Cupertino "Smurf" and that it was not uncommon for inmates, including the plaintiff, to sign greeting cards for staff on Unit 6. *Id.*

The term "Morning Dove" has a spiritual Native American significance to the plaintiff. (PFOF ¶ 16). It is customary and a common practice of their religious exercise to refer to members of the Native American group by their spiritual names. (PFOF ¶ 17). Kari Cupertino was a member of the Native American group at the WRC. (PFOF ¶ 18). The plaintiff referred to Kari Cupertino by her spiritual name "Morning Dove," as an exercise of his religion as a Native American. (PFOF ¶ 19). There was a common practice and policy of allowing inmates to give staff members greeting cards signed by staff and other inmate on Unit 6, at the WRC when the plaintiff was housed there. (PFOF ¶ 21).

Defendant Nickel did not personally participate in any decision regarding Offender Complaint RGCI-2005-37708; nor was he otherwise personally involved with this Offender Complaint. (DFOF ¶ 67). Raemisch, Endicott, and Nickel had no credible information that other WRC inmates with exactly the same participation in the same offence as the plaintiff committed and with the plaintiff's institutional

adjustment record, were treated more leniently than he was.[6]  (DFOF ¶ 71).

Raemisch and Endicott had no credible information that the plaintiff was singled out

to receive harsher punishment than other inmates.[7]  (DFOF ¶ 72). Nickel did not

single out the plaintiff to receive harsher punishment than other inmates.[8]  (DFOF

¶ 73).  Raemisch and Endicott had no credible evidence that the plaintiff was

punished for allegedly engaging in religious or spiritual activity.[9]  (DFOF ¶ 76).  The

plaintiff was not punished for allegedly engaging in religious or spiritual activity.[10]

(DFOF ¶ 77).

## ANALYSIS

In his motion for summary judgment, the plaintiff contends that his right to

equal protection was violated when he was punished for giving a signed card and

for referring to staff members by their nicknames and spiritual names, when other

---

[6]The plaintiff disputes this proposed fact.  He alleges that he provided each defendant with credible evidence at each stage of his administrative review that other inmates at WRC and who were similarly situated, were treated more leniently that he was.  (Raemisch Aff., Ex. C at 10; Endicott Aff., Ex. B at 42 ¶ 18).

[7]The plaintiff disputes this proposed fact.  He alleges that he provided credible evidence at various stages of their administrative review where they had the authority to abate the constitutional violation and provide the plaintiff with the appropriate relief.  (Raemisch Aff., Ex. C at 10; Endicott Aff., Ex. B at 10).

[8]The plaintiff disputes this proposed fact.  He alleges that he has presented sufficient evidence for a reasonable jury to conclude that Nickel did single out the plaintiff to receive harsher punishment than other inmates.  (Clark Aff.; Winston Aff.; Olson Aff).

[9]The plaintiff disputes this proposed fact.  He alleges that he provided each named defendant with credible evidence at each level of their administrative review that he was being punished for engaging in religious or spiritual activity by referring to Native American group staff members by their Native American spiritual names.  (Endicott Aff., Ex. B at 2-6; Raemisch Aff., Ex. C at 10-18).

[10]The plaintiff disputes this proposed fact.  He alleges that he presented sufficient evidence for a reasonable jury to conclude he was punished for engaging in religious or spiritual activity of referring to Native American group staff members by their Native American spiritual names.  (Endicott Aff., Ex. B at 1-27, Ex. C at 1-42; Raemisch Aff., Ex. C at 1-44).

-14-

similarly situated inmates were not, and when the defendants imposed punishment on him disproportionately to other similarly situated inmates for the same incident. The plaintiff further contends that punishing him for referring to a staff Native American group member by her spiritual name violated his rights under RLUIPA and the First Amendment.

The defendants filed a combined cross-motion for summary judgment and response to the plaintiff's motion in which they contend that: (1) the plaintiff is not entitled to declaratory relief under the circumstances of this case; (2) defendant Frank did not have sufficient personal involvement for liability; (3) the plaintiff may not proceed on his equal protection claim where he cannot prove purposeful discrimination on the part of the remaining defendants; (4) the plaintiff may not proceed on his First Amendment claims where his discipline was reasonably related to valid prison security, safety, and administrative interests; and (5) disciplining the plaintiff for violating § DOC 303.26(6) did not violate his rights under RLUIPA.

The plaintiff filed a combined response to the defendants' motion for summary judgment and reply. As an initial matter, he asserts that he has no objection to the dismissal of defendant Frank due to his lack of personal involvement in his claims. Thus, defendant Frank will be dismissed. The plaintiff further contends that: (1) the court should grant his request for declaratory relief if he prevails on the merits; (2) he has presented sufficient evidence for a reasonable jury to find that the defendants violated his right to equal protection of the law; (3) the defendants had no legitimate penological interest in the infringement of his First Amendment rights where the

evidence shows that the rule violation was arbitrarily interpreted and applied to him yet not to other inmates who engaged in the same conduct by referring to staff members by their nicknames and spiritual names; and (4) the defendants' interpretation of § DOC 303.26 places a substantial burden on the practice of his religion.

## A.    Equal Protection Claim

To comply with equal protection, governmental entities are generally required to treat all similarly-situated persons in a similar manner. *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). "To state an equal protection claim, a § 1983 plaintiff must allege that a state actor purposefully discriminated against him because of his identification with a particular (presumably historically disadvantaged) group." *Sherwin Manor Nursing Center, Inc. v. McAuliffe*, 37 F.3d 1216, 1220 (7th Cir 1994). Generally, prisoners do not constitute a suspect class and thus state actions concerning prisoners as a group are generally not entitled to heightened scrutiny. *Pryor v. Brennan*, 914 F.2d 921, 923 (7th Cir. 1990). Where the circumstances do not involve a suspect classification such as race or gender, an inmate who challenges a particular prison practice or regulation must show or indicate that the regulation is not reasonably related to a legitimate governmental concern, or must demonstrate that the challenged regulation or practice is an exaggerated response to those concerns. *See Turner v. Safley*, 482 U.S. 78 (1987); *Caldwell v. Miller*, 790 F.2d 589 (7th Cir. 1986).

Case 2:06-cv-00619-JPS   Filed 03/23/09   Page 16 of 23   Document 75

The plaintiff's equal protection is properly characterized as a "class of one" claim. "Class of one" equal protection claims arise without regard to protected-class status where the plaintiff "has been intentionally treated differently from others similarly situated and . . . there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In the Seventh Circuit, "class of one" claims under § 1983 require the plaintiff to "present evidence that the defendant deliberately sought to deprive him of the equal protection of the law for reasons of a personal nature unrelated to the duties of the defendant's position." *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000). The plaintiff must show that "the cause of the differential treatment of which the plaintiff complains was a totally illegitimate animus toward the plaintiff by the defendants." *Id.*

The plaintiff claims that he was singled out and received harsher treatment than other similarly situated inmates. As an initial matter, the plaintiff does not dispute that no defendant was personally involved in the decision to transfer him to RGCI and he does not object to dismissal of that aspect of his equal protection claim. He contends that defendant Nickel adjudged him guilty of violating § DOC 303.26(6), imposed a disposition of 360 days of disciplinary separation, and referred him to PRC to intentionally violate his constitutional right to equal protection and to punish him for the exercise of his Native American religion to refer to Native American group staff members by the "spiritual names." (Spence Aff. ¶¶ 17-24).

It is undisputed that defendant Nickel was the hearing officer at the plaintiff's disciplinary hearing. Following the full due process hearing on the plaintiff's conduct

report, Nickel reviewed the evidence and found the plaintiff guilty of soliciting staff in violation of § DOC 303.26(6).  His decision stated in part:

> I find that the statements contained in Unit Supervisor Harding's conduct report, the advocate and witnesses' statements, the evidence (written material) and by Mr. Spence's statements, that Mr. Spence directly violated 303.26(6) by his direct actions of asking personal non-work related questions and comments to staff members at WRC. Comments such as I love you, morning dove, smurf and mother smurf are conveys written affection [sic].  I find that it is more likely than not that Mr. Spence was asking for special attention from these female staff members of WRC.  I find that it is more likely than not that Mr. Spence's statements were meant to lead to favoritism and at the very least showed the appearance of impropriety towards these female staff of WRC.  It was shown by the evidence at the hearing that Mr. Spence showed a different "approach" to female staff compared to his written communication to male staff.

(DFOF ¶ 26).  Nickel imposed a penalty of 360 days disciplinary segregation and he also referred the plaintiff back to the PRC so his appropriate institutional placement and security classification could be determined in light of the CR.  It is undisputed that Nickel did not act as a hearing officer concerning any other WRC inmate accused of committing the same offense as the plaintiff.  It is also undisputed that the penalty Nickel imposed on the plaintiff was made after an individualized evaluation of the circumstances underlying the CR in light of the sentencing factors set forth in § DOC 303.83.

The plaintiff submitted affidavits of inmates Eugene Pace, Jeremy Clark, and Michael Lee Winston who were charged with soliciting staff, who were not transferred from the WRC and who, therefore, had their hearings at the WRC, and who were sentenced to 90 days, 90 days, and 180 days disciplinary segregation,

respectively. However, these affidavits do not establish that these inmates were charged based on the same exact activities as the plaintiff. Specifically, there is no indication that inmate Pace, Clark, or Winston requested some "Smurf information" from Kari Cupertino or that they wrote "I love you" in a card to her.

The undisputed facts reveal that defendant Nickel did not single out the plaintiff to receive harsher punishment than other inmates. The undisputed facts also reveal that defendant Endicott, who affirmed Nickel's decision on the hearing after the plaintiff's appeal and who dismissed the plaintiff's offender complaint at the institution level, had no credible information that the plaintiff was singled out to receive harsher treatment. Further, it is undisputed that defendant Raemisch, who dismissed the appeal of the plaintiff's appeal of the dismissal of his offender complaint, did not have credible information that the plaintiff was singled out to receive harsher punishment than other inmates. There is no basis in the record for a finding that the defendants violated the plaintiff's right to equal protection.

**B.     RLUIPA and First Amendment Claims**

RLUIPA prohibits the government from imposing a "substantial burden on the religious exercise" of an inmate unless the government demonstrates that the burden is: (1) in furtherance of a compelling governmental interest; and (2) the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-1(a). In litigating a RLUIPA claim, the plaintiff bears the burden of establishing that the government has imposed a substantial burden on his or her religious exercise. 42 U.S.C. § 2000cc-2(b). Under the statute, a "religious exercise" is "any exercise of religion, whether

or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). However, a religious belief must be sincerely held in order to receive protection under RLUIPA. *See Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) ("Although RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion . . . the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity").

RLUIPA does not define "substantial burden." However, the Court of Appeals for the Seventh Circuit has, in the land use context, held that the government imposes a substantial burden on religious exercise if its action "necessarily bears a direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable." *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003). In applying this definition of "substantial burden" to prisoner litigation, the Seventh Circuit stated that "[i]n determining whether an exercise has become 'effectively impracticable,' it is helpful to remember that in the context of the Free Exercise Clause, the Supreme Court held that a government imposes a substantial burden on a person's beliefs when it 'put[s] substantial pressure on an adherent to modify his behavior and violate his beliefs.'" *Koger v. Bryan*, 523 F.3d 789, 799 (7th Cir. 2008) (quoting *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981)). If the plaintiff discharges his or her burden to show that the government has substantially burdened religious exercise, the burden of persuasion shifts to the government to come forward with evidence demonstrating that the challenged practice furthers a "compelling

-20-

governmental interest" and does so by "the least restrictive means." 42 U.S.C. § 2000cc-2(b); *Koger*, 523 F.3d at 796.

In addition, as a prisoner, the plaintiff retains those First Amendment rights that are not inconsistent with his status as a prisoner or with legitimate penological objectives of the correctional system. *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Encompassed within the First Amendment is the right of free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *Richards v. White*, 957 F.2d 471, 474 (7th Cir. 1992); *Kaufman v. McCaughtry*, 419 F.3d 678 (7th Cir. 2005). A prisoner is entitled to practice his or her religion as long as doing so does not unduly burden the institution. *Richards*, 957 F.2d at 474. A prison regulation that infringes upon an inmate's First Amendment rights is valid only "if it is reasonably related to legitimate penological interests." *Alston v. DeBruyn*, 13 F.3d 1036, 1039 (7th Cir.1994) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). In balancing the two interests, several factors are relevant: 1) whether there is a legitimate governmental interest underlying the prison officials' actions; 2) whether the prisoner retains alternative ways of exercising the right in question; and 3) the impact accommodation of the asserted constitutional right would have on guards, other inmates, and on the allocation of prison resources. *Richards*, 957 F.2d at 471 (citing *Al-Alamin v. Gramley*, 926 F.2d 680, 685 (7th Cir.1991)).

In this case, in addition to being punished for calling his social worker by her spiritual name, Morning Dove, the plaintiff was also punished for the content of his letters which included calling her "Smurf," requesting some "Smurf information," and

saying "I love you" to her. There is no indication that these assertions were part of his religion. Further, there is no indication that if the plaintiff had simply called the social worker by her spiritual name that he would have been punished for violating § DOC 303.26(6). Rather, it appears that that activity alone would not have resulted in a violation since the plaintiff has provided evidence that many people called her by her spiritual name. Thus, the plaintiff has not made a prima facie case under RLUIPA that § DOC 303.26 substantially burdened the practice of his religion.

Turning to the plaintiff's First Amendment claim, enforcement of § DOC 303.26(6) will be upheld if it is reasonably related to the prison's legitimate penological interests. *O'Lone*, 482 U.S. at 349. In this case, it is undisputed that § DOC 303.26(6) prohibits the solicitation of staff and that enforcement of such rule is necessary for the security of DOC institutions as well as the safety of inmates, staff, and visitors. *See also Borzych v. Frank*, 439 F.3d 388, 390 (7th Cir. 2006) (First Amendment does not require the accommodation of religious practice – states may enforce neutral rules) (citations omitted). Accordingly, the plaintiff's First Amendment claim will be dismissed.

## C. First Amendment Free Speech Claim

The plaintiff does not challenge the defendants' motion for summary judgment as to his free speech claim. Also, the plaintiff's summary judgment motion does not argue in support of the claim. Therefore, the plaintiff has abandoned this claim and it will be dismissed. *See, e.g., Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir.1999) (stating that arguments not presented to the district court

in response to summary judgment motions are waived); *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 624 n. 3 (7th Cir.2001) (same); *Palmer v. Marion County*, 327 F.3d 588, 597-98 (7th Cir. 2003) (deeming appellant's negligence claim abandoned, in part because he failed to delineate the claim in his district court brief in opposition to a motion for summary judgment) (citations omitted). Accordingly,

**IT IS ORDERED** that defendant Matthew J. Frank be and he is herewith **DISMISSED** as a party defendant;

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (Docket #48) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (Docket #58) be and the same is hereby **GRANTED** and this action **DISMISSED** on its merits together with costs as taxed by the Clerk of the Court.

The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 23rd day of March, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge